Our first case this morning is number 23-1053, Erie Insurance Exchange v. Erie Indemnity Company. Mr. McGinley. Good morning, Your Honors, and may it please the Court. Michael McGinley of Deckard LLP on behalf of Appellant Erie Indemnity Company. I would like to reserve four minutes for rebuttal. This case is and always has been a class action that belongs in federal court under the Class Action Fairness Act. Excuse me, can you hear me, counsel, because I was going to wait a bit, but we have limited time, and you've started out with what I was going to ask. If the heart of this case is just that, whether or not this is a class action that was at the center, that was central to the Stevenson case, is that central to this case? It is, Your Honor, for a number of reasons. What is a class action definitionally then under CAFA? And this is not a fact situation that, speaking for myself, I've ever seen, or perhaps I should say procedurally postured case, but getting right to my concerns from the start in reading the briefs, reading the amicus brief, it seemed to me that the approach that was being taken by the plaintiff's side, or rather by your side, I'm sorry, was more purposivist, that it went to the policy behind CAFA, which we all have seen develop with its passage in 2005 and even events in Congress leading up to that. So what is it about the text of CAFA, which is quite particular, that makes this a class action as defined there? Sure, Your Honor, and I'd like to take it in a few different steps. The first step is, first I would say in the CAFA context, this court and the notion of some element of purposive interpretation of the statute is not a bad thing, but is that actually required of the court? Well, no one's suggesting it's a bad thing, but please tell me where it is required, because I am familiar with language about broad interpretation, which is suggestive of liberal interpretation, but as to what provisions of the Congress enacted CAFA in order to ensure that interstate cases of national importance would be litigated in a federal court, that is part of the statute, as DART Cherokee from the Supreme Court recognized, and as this court's decision OptumRx recognized. But I'd also like to take the court back to how this case started, which was, it was filed as a class action, it was removed by indemnity to federal court, and only once it was— That's all true, but this is a different case, or maybe it's, I mean, really similar to your complaint following up on Judge Smith's questions, is that you want to define this as a class action, you want to say that we need to treat this as the same case, even though it was filed under a different number in a different way. That's right. Well, yes, Your Honor, I mean, we have another argument that I'll get to, but it is core to our REDCAP argument that this is the same case under Bodinichar. In fact, the court says explicitly in Bodinichar that when a plaintiff dismisses and refiles in order to effectuate an amendment, it is treated as the same case. And just as in Bodinichar, indemnity here is defending the same allegations, the same claims against the same plaintiffs brought by the same court. But has REDCAP ever been applied to a dismiss and refile move, like we have here, rather than an actual amendment? Well, so in Thatcher, REDCAP was where they had to seek consent to dismiss and refile, could not do that, and it was an abuse of discretion for the district court to allow them to do that. If it's an abuse of discretion for the district court to allow it, I don't see how it could possibly be permissible for the plaintiffs to do it unilaterally. And I would say also what REDCAP teaches itself is that even once a plaintiff has effectuated a change post-removal, because in REDCAP, the plaintiff did actually fix jurisdiction in the federal court. Mr. McGinley, it's Judge Bibas here. I want to come back to the second part of Judge Brooks's question, Judge Smith's question, which was about the statutory text. So let's look at Section 1332d1b. The term class action means any civil action filed under Federal Rule 23 or similar state statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action. Now, you are not maintaining that Pennsylvania Rule 2152 or 2177 is a similar state statute or rule, correct? Your argument depends entirely on the prior rule, the rule, the prior action was brought under being a class action rule, but you're not saying that about Rule 2152 or 2177, are you? Well, so Your Honor, two pieces there. We are saying that we do think that the way that the case is as a class action, you know, obviously we've argued that. I'm sorry, I'm focusing on the statutory text, which focuses on a similar state statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action. Now, 2152 and 2177, as I understand them, are not class action rules. Pennsylvania has separate class action rules. Do you have any basis for arguing that those two rules are rules authorizing an action to be brought by representative persons as a class action? Yes, Your Honor. So we've argued that if this court wishes to, obviously that was the issue in Sullivan, right? And we've argued that if the court wishes to overrule Sullivan, it can, because we do think that those provisions, especially the way that they've been used. How can we do that? What intervening authority would give The parenthetical in dark Cherokee doesn't get you there. No. So we think the parenthetical in dark Cherokee does, it's not just a parenthetical, but it's relying on the Congress's expressed statutory provision. But we also think Addison, excuse me, are you referring, are you referring, and is previously you referring to the reference to the Senate report? Yes. So it's a Senate report. And then also buttressed by the Senate report. Under our own jurisprudence in terms of legislative history, what does it add? And furthermore, as it has been cited in this opinion, uh, in, in dark Cherokee, I simply don't see how it can bear your argument, compare the weight that you suggest it has. So Your Honor, what I would say is that in this setting, which is very different than Sullivan, because you have a first filed class action. So you have evidence of evasion and you have evidence that the plaintiffs themselves specifically considered this to be a dispute that was worthy of class action treatment. And then you have an attempt to dismiss and refile to effectuate an amendment in an effort to evade. So someone changed their mind and filed a second action perhaps. Right. But what red cap says is that once federal jurisdiction That's that they can't do that. And that red cap is in the context of a single suit. And there are lots of places where the law is formalistic about this piercing the corporate veil, a suit by, uh, against corporate officers is different from a suit against the entity here rules. You haven't explained why we shouldn't see a suit under 21 52 and 21 77 as filed by the entity. You avoid calling it exchange, but it's the exchange. So Your Honor here, I think I can get at it in a pretty simple way, which is similar to how the seventh circuit got at things in Addison and how the eighth circuit got at them and Williams, which is that the plaintiffs here have no authority to bring this suit on behalf of exchange. They, they expressly state in their own brief that indemnity under the contract is the only exchange. And, and the rules under Pennsylvania law say that 21 52 doesn't apply to insurance associations. And so they can't use that statute. And so how is this, how is this a representative action, Mr. McGinley, a rule 23 action by definition, classically as a representative action. How is what we are fighting over here? A representative action. Sure. Your Honor, two answers to that. First, they brought it as a representative action initially. And then the reason we know it's a representative action is because they expressly state on page 42 of their brief that they're seeking to pursue this case on behalf of all members of the exchange to benefit all members of the exchange. And the nature of the relief that they seek, which is an injunction, barring indemnity from taking a certain amount of money as the, as the management fee shows that it would apply equally to all members of the exchange. The other thing I would say is here, it's especially pernicious for them to try to contort their pleadings in this way, because not only would they benefit all members and thus do this as a representative action, but if they were to lose, they would bind all members. And so what this really looks like to me is either a rule 23.2 action seeking representative relief on behalf of an unincorporated association, or actually maybe a 23 to be to injunctive relief claim that it's a non opt-out that would bind everybody. And so you can't, it can't be that they can come in, seek relief on behalf of an entire class of 2 million subscribers that span 13 jurisdictions, but through the labeling and art and artifices of their pleadings tell you that it's not subject to Catholic. Mr. McGinley, there's a federalism aspect here. What you didn't cite at 42, just after that in their brief talks about broadening the scope of the relief to the Pennsylvania rules are about associations bringing actions. It's Pennsylvania's prerogative to decide whether to conceptualize this second suit as one brought for individual class members or for the unincorporated association. And this is an unincorporated association suit. So it seems to me like your action really does stand or fall on whether we merge the two suits into one. You haven't really convinced us that we can regard this second suit as a class action, unless you can extend Red Cab from the context of one suit to two suits. That's a big step. And you've got maybe one case that gets you there. So maybe you ought to spend some time talking about Vodenichar, which is your best authority. I'm happy to talk about Vodenichar. And I just stating for the record, we do think that there is a basis to get there even without Red Cab, but we also do think Red Cab is the simplest and cleanest way to get there. And we think that Vodenichar makes it clear that when a plaintiff dismisses and refiles for the sake of amendment, it's the same case. And it can't be that that's true when it benefits plaintiffs, but it's not true when it hurts plaintiffs, especially because the entire purpose of CAFA and the design of CAFA was to ensure that cases like this are litigated in federal court. Doesn't it matter textually that Vodenichar, and I was on that panel, actually was talking about a same case and the reference to other class action in the context of the local controversy exemption? I don't think it makes a difference, Your Honor, because the core of the reasoning there is that when there was a dismissal and refiling and the new complaint was filed, the practical effect was an amendment. And what the court says is that it's the same case and it doesn't treat it as two cases because treating it as two cases would mean that the local controversy exception wouldn't have been available there. And so it can't be that where you're interpreting that provision of CAFA, you treat it as the same case, but when you're enforcing Red Cab, which is expressly incorporated into CAFA and is the basis of removal jurisdiction in this setting, that you treat it as two separate cases, it just doesn't make sense. And it would promote exactly the kind of evasive conduct that CAFA was enacted to prevent. Unless the court has further questions, I'd reserve the remaining of my time. Yeah, I do want to ask, I mean, Vodenichar does look like it's distinguishable because, you know, the district court is treating it as a continuation. The discovery in the first is being treated as part of the second. I mean, it goes some of the way towards what you need, but it does seem like a very unusual case. There are real costs to avoiding the formalism of separate suits. You know, it does seem like you'll put us on a slippery slope towards judging whenever it's the same lawyers who are bringing something with a slightly different theory, how similar is similar enough. If we avoid formalism and we pierce the shell between these two actions, how are we going to avoid opening up a can of worms where every time plaintiff's lawyers are trying out different theories with different plaintiffs and different causes of action, different courts, we're not presented with having to draw fine distinctions among them. Well, because I think Vodenichar itself shows that the courts are capable of doing that. And our case falls squarely within that similar set of facts where you do have the same plaintiffs asserting the same allegations and the same claims by the same lawyers. Personally, I don't know that the same lawyers makes a huge difference, but obviously it just confirms what is obviously true, which is that it's an amendment rather than a separate suit. But also, in fact, in this case, it's even more clear because what happened in Vodenichar is that they added additional defendants and additional claims against those defendants, but this court still held that it was the same case for purposes of tax jurisdiction. And I don't think that it'll open a can of worms or slippery slope because first of all, you can just confine that case in this case to the facts, but also... We're not just announcing just to the facts. That's going to open a can of worms. Articulate a rule that will keep this from becoming a slippery slope. Sure, Your Honor. And I believe that I just have. The rule is if it's the same plaintiffs and the same allegations and the same claims, it's treated as the same case. And that is perfectly consistent with Red Cab, which says in the context of an amendment, it's the same case and they can't destroy federal jurisdiction after removal has vested it. And it's consistent with the overall design of CAFA, which is to ensure that interstate cases of national importance are litigated in federal court and that plaintiffs can't use gamesmanship to destroy that. Gamesmanship includes trying to get under the $5 million requirement? Yeah, that's exactly what happened in Standard Fire, Your Honor. And I think what's happening here is of a piece with Standard Fire because what the plaintiffs are trying to do is contort their pleadings to avoid federal jurisdiction in a way that will bind the people that they claim to represent. And it's if somebody wants to bring a garden variety diversity case, they can't stay in state court by making sure that they seek less than $75,000. No, Your Honor. And the Standard Fire opinions analysis makes that clear. It's that when you're acting on behalf of other people, you can't bind them by making representations that are an effort to avoid what Congress provided under CAFA. Isn't the jurisprudence generally in this area, in fact, even pre-CAFA, usually to the extent that we want to use the pejorative gamesmanship, directed at structuring to avoid amounting controversy issues. Hasn't that been really the frequent recurrence of arguments over whether or not there should be federal diversity jurisdiction? It's not what we have here. Well, Your Honor, it certainly has occurred in that fashion a number of times. No, I know it's occurred. My question was not that. Hasn't it generally been the most often present issue or reason why there have been argues of gamesmanship, a structuring or an attempt to evade, if you will, amounting controversy requirements? No, Your Honor, because there's also cases where plaintiffs have tried to chop up their complaints by either geography or time. But also I would point you to Addison and Williams, which are cases where plaintiffs tried to do exactly what these plaintiffs tried to do, which is to take what is essentially a class action and then pretend that it's an individual action. And both the Eighth Circuit and the Seventh Circuit said that they will not exalt form over substance and they won't have the wool pulled over their eyes in a context where there clearly is an attempt to bring a representative suit on behalf of an interstate class of plaintiffs that meets the amount of controversy requirement. And I would ask Your Honors to look at this case and do the exact same thing here. And it's even more clear here because these same plaintiffs brought the same allegations and the same claims as a class action, which makes this fundamentally different than Sullivan and reveals the true nature of their suit. All right. Thank you, Mr. McGill. I hear you on rebuttal, Mr. Cooper. May it please the court. With all due respect to counsel for appellant, plaintiffs haven't told this court that this case is in a class action. The courts of the Commonwealth of Pennsylvania have. There is a long line of cases interpreting Rule 21-52 and 21-77 in the state of Pennsylvania that this court referenced and relied upon heavily in the previous case, which has been called Sullivan before this court, that a case like this brought on behalf of a Pennsylvania unincorporated association can not be and is not a class action. So in this case, this court is considering a case not of national importance, but a purely state case. This is a Pennsylvania unincorporated association suing a Pennsylvania entity pursuant to Pennsylvania common law under Pennsylvania rules of civil procedure that make clear, as this court has previously held, are not a class action. Mr. Capella, could we could we return to the issue that Judge Bibas brought up, which is our precedent in Rodanichar and the fact that we said there that a second filed action is a continuation of the first filed action because dismissal and refiling is functionally equivalent to amending a pleading. That's a part quote, part paraphrase. Isn't that a strong, perhaps the strongest argument that indemnity has here? It is, but I still think it's a fairly weak argument if the court looks at Rodanichar. I think the first distinction is that Rodanichar involved a dismissal pursuant to Rule 41-A-2, which needed the court's approval instead of 41-A-1, because in that case, the defendant had answered. If indemnity wanted to ensure that dismissal by right under 41-A-1 wasn't available to the plaintiffs in the Stevenson case, they could have answered. They had weeks to do it. They could have filed a motion for summary judgment. They had weeks to do it. They did not. More importantly in Rodanichar, the claims that were brought back to the court were class action claims that were nearly identical to the previous case. Does it matter that we treated the two cases as continuous for the purpose of denying rather than upholding federal jurisdiction? I don't think that it does, Your Honor. I think in that case, the court considered them identical for the purpose of evaluating jurisdiction because in evaluating the parties that had been added to the second complaint, this court correctly held that capital jurisdiction wasn't possible because of a little controversy exception. In this case, what we have in Stevenson, which has been a nullity for more than a year, is a case that was brought as a class action and not even on behalf of the same parties. The Stevenson case involved a class of Pennsylvania residents and not which, by appellant's own admission, wouldn't come close to constituting every member of the unincorporated exchange. When they removed that case to federal court, indemnity made the point quite strongly that in their view it was improper to proceed in that limited fashion because each and every member of the exchange stood in a relatively undifferentiated position with regard to one another and therefore bringing a lawsuit on behalf of some small subset of the exchange was impossible because any ruling would benefit the entire exchange. So Pennsylvania law provides a manner to accomplish just that, to bring suit on behalf of an entity, but I think it's an important distinction that the claims and relief sought in these two cases are not the same. Much like a securities class action as compared to a shareholder derivative lawsuit, if exchange is successful in this litigation, whatever money or corporate governance changes are brought about will benefit the exchange. There will be no notice sent out to class members and checks will not be directly mailed to class members as they would necessarily have been in a class action. These cases are completely different in that nature. They're brought by a different party against the same party, admittedly, and based on the same set of operative facts, but much like a securities class action in a shareholder derivative lawsuit, they seek completely different relief. How do you foresee distribution being administered here if you were to prevail? We know the practices that are pursued and the practical ways those are effectuated with Rule 23 actions, but here, assuming that you prevailed and prevailed pursuant to the manner in which you have framed your claims as actually violations of fiduciary duty, how do you go about actually distributing what is recovered? And let me just tag onto that. Is there any opportunity, as there would be under B3, to opt out of a proceeding? There won't be an opportunity. There wouldn't be an opportunity to opt out. Certainly members of the exchange could object to any proposed settlement and appear in court, and much in the same way in a shareholder derivative lawsuit, other shareholders who would object to the terms of the settlement could appear and object to the terms of the settlement. The same practical rules would apply. Putting corporate governance structures aside, which would obviously benefit members of the exchange going forward, if money were returned to the exchange, that money could be used in several different ways. It could be used to reduce premiums for those members of the exchange that continue to purchase premiums from Erie Insurance for those dividends could be paid, and some hybrid of the two. Of course, there are, much like in a shareholder derivative lawsuit, there are ways for attorneys for the company and for the derivative shareholders to agree on some sort of structure for how the money will be used, but that's all part and parcel of how this case would proceed. But what wouldn't happen is checks wouldn't be direct. There would be no notice to the class member. There might be, I should say, there would be notice of the class members, but direct checks would not be mailed because this action is not being maintained on behalf of a court-created group of individuals who are cohered for the limited purpose of existing as an entity for the purpose of litigation. This entity exists, right? That's a fundamental difference between the Stevenson case and this case. It existed prior to the filing of the action and will, for all intents and purposes, as far as we know, continue to exist after the action, however the action is resolved. Absolutely, Your Honor. This case doesn't require on a, I don't want to call it a legal fiction because I'm a plaintiff's class action lawyer, but it doesn't require on the court's approval of gathering together for the purposes of litigation a group of individuals. This group of individuals has existed. It exists as we stand here and it will continue to exist, and this case is brought on their behalf and, well, on behalf of that entity by trustees and for the benefit of that entity. I think that their argument regarding Stevenson is telling. Knowing they, under Sullivan and this court's to ensure close, ensure careful division between state law and federal law, the only way for them to call this a class action is to call this an amendment of the Stevenson action. But the word amendment means just what it says. It's an amendment of that action. This is not that. This case, the complaint in this case is unchanged, has not received a single edit or proposed amendment from the moment it was filed in the Court of Common Pleas in Allegheny County. It has not been amended since it has been removed, attempted to be removed to federal court. And I think that's an important distinction. All of the cases they cite in for as support for their for their position involves some sort of post removal attempt by the plaintiffs to change the the the allegations or relief sought in that complaint to avoid CAFA jurisdiction. And in each in almost every case, as you pointed out, your honor, that involves a manipulation of the amount in controversy. That's the one thing in this case that we haven't argued about at all. The amount in control. There are other ways to avoid federal jurisdiction. Sure. And including styling it not as a class action. Absolutely not exactly what happened here. It seems pretty transparent. I mean, lawyers make strategic decisions all the time. And one thing that screams out from the record here is a strategic decision was made to be in state court. Absolutely, your honor. And it's not nefarious. I mean, the some of the the the language in the briefing by indemnity suggests that there is something nefarious or underhanded in the attempt to stay in state court. But, you know, the rule number one of the federal rules is that you are of course, the statute doesn't use words like nefarious nor evasive or any of the pejoratives that have popped up in this case. And I understand that we we heard them. We saw them. We've read them in the congressional record in the legislative history here. What is what is a truism, whether people want to admit it or not, is that generally I emphasize generally plaintiffs would with many class actions prefer to be in state court and defendants would prefer to be in federal court. That's just the reality. But there's nothing nefarious as Judge Hardiman's question suggests about a strategic preference with respect to how counsel wishes to litigate his client's case. Right. Of course, your honor. And that's a softball in case nobody practicing. It's a practicing lawyer who spends almost all of his time in federal courts. It's home to me. So I'm actually much more comfortable there in state court because I know I know the rules in the law much better. But I think also I think it's important for this court to recognize that and realize that there's an efficiency to litigating this case the way we have postured it now. Well, my point simply was that this is that the preferences that I stated were very much behind the actions which Congress took and whether they're right or wrong. We are always dealing with the result of that, not with whether the action Congress took was an informed one, a good one, a bad one, whatever. Of course, your honor. And CAFA, when it said when it's state when Congress referred to cases of national importance, they were referring to class actions because if you look at the statute, it applies only to class actions. The case may be removed yet. Certainly they were. I mean, you raised a question that has not been an issue in this case, and I'm not sure that I've ever seen it in any of the cases that I've I've read in connection. Certainly I haven't seen in connection with this case or otherwise in my teaching experience. And that is what is a case of national importance. Do you know if the courts have ever held forth on that? Because I'm not satisfied that Congress really told us that. I would argue that. I mean, I think I think the congressional record for CAFA is rather thin, as this court has pointed out on at least one occasion and probably shouldn't be relied on to interpret what CAFA means. But I don't know what a case of national importance is. And I think it's a completely unworkable standard that invites judges making decisions here and on their whim what constitutes one or what isn't, whereas the actual rules of CAFA provide very clear and coherent checklists of what constitutes a class action. And this court has held, and more importantly, the Commonwealth of Pennsylvania has held that the case as we have postured it and as it exists now doesn't qualify. Wouldn't you concede this is at least a case of multi-state importance? I would. I would concede. Potential beneficiaries, if you're successful, in at least, I think, 13 states? Absolutely, Your Honor. But in 2020, a $310 million shareholder derivative lawsuit was settled in state court in California against Google, who has thousands of more shareholders and vastly more national network than this case. And that case was litigated in state and state court. Why? It was brought by shareholders as trustees of the entity, California entity, against a California entity. And there was no basis. There wasn't even minimal diversity to allow that case to be removed to state court. Now, surely that case is more of a case of national importance than this one. And it wasn't removed to federal court under some general principle that just because it's a big case, just because it might affect a lot of people in a lot of states, we get to remove it to federal court. And the same rule should apply here. State courts are, you know, Judges Ignellsi and Judge Zeffie down the street who would preside over this if it goes back. They're quite competent to preside over a case that involves complex issues and a lot of money and people from different states and complex questions of law. And this case belongs in front of them. And that's where this court should approve the district court's order, remanding it based largely on this court's prior ruling in the previous matter involving a case brought by Erie Exchange against Erie Indemnity. And we respectfully request this court to send it back. All right. Thank you, Mr. Kilpella. We'll hear rebuttal from Mr. McKinley. Before you make your arguments, Mr. McKinley, I just want to note one thing. I think we started with the concept that this is a de facto class action. Is that fair that that's your argument? Our argument is that this is a class action. I want to be. It is actually a class action? No, that it's similar to a class action. I appreciate the similar qualification, because I did note with interest when I read your opening brief that at several places, including on the very first page, including in your summary of argument, the phrase class action is in quotation marks. So that sort of bespeaks that this isn't truly a class action, right? It's like a class action, you used the word similar. I suggested de facto class action. Would you elaborate? Sure, Your Honor. And I think the distinction sort of turns on whether you're going down the red cab route, which is to say that this was a class action, it started as a class action, and they couldn't destroy federal jurisdiction under CAFA, or whether you're looking at it under the similar to language. And we would say that Rule 23.2 shows you how an action like this can be similar to a class action under Rule 23. And that's because just as Mr. Capella explained to you here and how this case would unfold, it is a representative suit in which three individuals seek to benefit the entire class of subscribers for ERIE. We only deference the Pennsylvania law as to whether this is in fact similar to a class action, consistent with Judge Bevis's questions when you were first here. Pennsylvania has a reticulated regime for class actions, and this isn't part of that regime. So do we owe any deference to that? Or are we supposed to just say, well, even though it doesn't fit Pennsylvania's class action rules, it is one anyway? I don't think you owe any particular deference. Certainly, as they did in the first complaint, when they pleaded under the Pennsylvania class action rules, I don't think you need to apply any deference to realize that that is a class action that clearly qualifies for removal. But courts have looked at things where plaintiffs have tried to restyle them in a way to avoid the appearance of a class action, and they haven't deferred to state interpretation. So for example, in Addison and Williams, the plaintiffs tried to restyle their action as an individual action to avoid the state class action regimes. And the court said, no, we can see what the true nature of this suit is. You're seeking relief on behalf of the whole class. And by the way, you would bind the whole class if you were to fail in your attempt to seek relief. The other thing I would point out here, Your Honor, is that the unique nature of the exchange is that all the subscribers are in privity with each other. That's the holding in writs. And so by seeking to act on behalf of all those subscribers— The exchange is nothing if not unique. I think everyone agrees on that. That's true, Your Honor. And I think that's a reason why you wouldn't be opening any kind of slippery slope here. You can look at this case. The true nature of it was clear from the beginning. Plaintiffs brought it as a class action. That's because that's what it is. They're seeking relief on a class of 2 million plus subscribers for well over the jurisdictional amount and across 13 jurisdictions. And I would say that is enough on its own. It's clearly what it was. The harder question is, is that what it is? Well, I think it is and it wasn't. And they had no right to destroy federal jurisdiction under REDCAB in the interim. And I think also it makes it clear that this case falls outside of Sullivan. Sullivan was absolutely clear. Excuse me. Could I return to what you just said? How did they destroy federal jurisdiction in the interim? Well, we don't think that they did because they had no right to, but that's what they've attempted to do. They were your words, I thought. I thought that's how you characterized what took place here. They had a right to dismiss their case. The rule specifically provides that. Sure, but they also had a right to amend their complaint, but REDCAB says that amending doesn't destroy federal jurisdiction. All right, but they didn't. That's a procedural fact. We all know that. They chose to voluntarily dismiss. So at that point, there is a nullity. Is there not? And in fact... No, the same reason that in Vodinichar, it didn't mean that there were two class actions for... It is a nullity until there's another class action, isn't it? I mean, how can you say that a nullity constitutes the existence of a thing? I'm trying to understand that. If the day after the voluntary dismissal occurred, the world came to an end, was there some case continuing? No, but the federal jurisdiction... If, you know, Mr. Kilkella had... Could you propose, Judge Hardiman, perhaps a more positive alternative? My mood is bad enough these days. No, and look, I want to be clear, Your Honor. If they had dismissed and gone away, that obviously would have been fine with us, but what they couldn't do was affect an amendment that violates REDCAB... So there was no jurisdiction there. We can come back to this It really comes down to whether this is an amendment and a continuation of the initial case. That's really the pivot point for this decision. Well, yeah, on that part of the argument, yes, Your Honor, and we think that REDCAB, Vodinichar, Addison, and Williams make it absolutely clear that that's what it was. It was an amendment that was the same case. As Mr. Kilkella told you, they're bringing the same claims, the same allegations. Indemnity is of them. Well, no, no, not quite. Not really, Your Honor, because it's the same representative plaintiffs, and they have no right to stand into the shoes of exchange. Their own briefing and pleading says... Isn't that a merits argument? No, Your Honor, because it's the same as what happened in Addison and Williams, where there's a question as to whether the individual in those cases could proceed as an individual or whether they were acting on behalf of the class, and in that case, the court said, no, we don't exalt form over substance. We don't allow creative labeling, and the reason that you know it here is their own pleadings state that indemnity acts on behalf of the exchange. Individual members have no authority to act on behalf of the exchange. That's a provision in the Subscriber's Agreement, which grants indemnity as attorney, in fact, the exclusive right to act on behalf of the exchange, and so what's happening here is they're trying to use a clever labeling and pleading tactic to obscure what they're trying to do, which is to seek relief on behalf of the entire class, the same exact relief in both the initial class action they filed and the amended complaint that they tried to bring through the dismiss and refile. They want an injunction. That injunction would apply to everyone in all states. That's what makes this a case of interstate national importance, because it applies to 13 jurisdictions, 2 million plus subscribers. We know from CAFA that that's what they meant by it, because they said minimal diversity, amounting controversy, and at least 100 people, and we have that here. We had it from the beginning. What about Mr. Capella's argument about the Google case? Is it your view that that was wrongly decided that that should have been in federal court? I have a point there. I mean, I don't know all the facts of that case, but it sure sounds to me like it was an interstate case of national importance. The important point is we're not asking you—I want to make it clear, because what Mr. Capella said at the end seemed to suggest that we're asking you to just act on the sort of, you know, pure, purposive interpretation of CAFA. We're not. They filed this as a class action at the start. The same plaintiffs, same lawyers, same claims, same allegations, so you don't have to take our word for it that this is a class action and always has been. That's how they brought it. That matters. It mattered in Sullivan. It's not how they brought it. They brought it, the second case, on behalf of an unincorporated association. There is a legal distinction between unincorporated associations and classes. There's a legal distinction between classes and individuals, and in Addison and Williams, that didn't make a difference because the court said, it's clear what you're doing and the only thing you could be doing is seeking relief on behalf of the class. That's exactly what we'd say is happening here. Hasn't Judge Hardiman just made a very important point by indicating, by suggesting that this was a legal point in changing the identity of parties, as opposed to what is really a factual issues in so many. You and I seem to differ over the quantitative occurrence of attacks upon jurisdiction based upon amount and controversy, but irrespective of how often that's occurred, that's a factual issue, whether or not an amount in controversy is capable of being met. It's pleaded, but whether or not it's met is going to be a factual issue. Well, but the courts have consistently said in that context and in the others that they can look beyond the pleadings to ascertain the true nature of the suit. In standard fire, that's what happened in Freeman and the Sixth Circuit. Still factual, isn't it? No, Your Honor. I think it's a legal determination under CAFA. It's a legal determination under CAFA as to whether the case qualifies under CAFA. And I would come back again to the core point that under Red Cab, this case was properly removed. They had no right to voluntarily dismiss, refile and effectuate an amendment, which is in violation of Vodinichar's principle, that it is the same case when that's what happened. And so we would ask this court to reverse. Thank you. Thank you, Mr. Chotel. The case was extremely well argued and well briefed. The court will take the matter under advisement. Thank you, Your Honor.